UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Charles Langone, as Fund Manager of the New England Teamsters and Trucking Industry Pension Fund,<br>　　　Plaintiff<br><br>v.<br><br>The 357 Corp. | CA CV No. 11454-GAO |

## DEFENDANTS' ANSWER

### Defendant The 357 Corporation's Preliminary Statement:

A. In an unrelated arm's-length transaction, the Defendant sold all its assets to Webster Corporation, which Defendant understood was a wholly owned subsidiary of the DaSilva Group, in October, 2001. Those assets essentially consisted of a service contract to provide drivers mostly for a large supermarket operation; the sales price was $250,000.00 - $10,000 attributable to good will, and the remainder to the value of the contract, to be paid out over three years. The remainder of this receivable is the only remaining asset of the Defendant;

B. All the Defendant's employees, including supervisors, went to work for the purchaser. The purchaser has continued contributions to the Plaintiff Fund on behalf of those employees, who are doing the same work under the same contracts. The Fund has suffered no loss whatsoever. The group of which the purchaser is a part is one of the Fund's biggest contributors and there is no reason to believe its contribution level will decrease;

C. Nevertheless, the Fund has sought a withdrawal liability payment from the Defendant in the amount of $4,865,209.00, to be paid either in full or at approximately $250,000.00 per month for the next twenty (20) months;

D. Under 29 USC sec. 1381(b), an employer's withdrawal liability is to be adjusted "in accordance with section 1405 [ERISA Section 4225] of this title." The Fund has grossly and wilfully miscalculated the amount due by failing to take into account ERISA Section 4225, 29 U.S.C. sec. 1405. Section 4225 requires, in a

sale of assets (a determination which the Fund has never contested), that the Fund make a particular calculation, which it has reported to the Defendant it cannot and will not do. Under an Opinion Letter issued by the Pension Benefit Guaranty Corporation, No. 82-8, (attached as Exhibit #1 and incorporated herein by reference) if this calculation cannot be done then the Defendant's withdrawal liability is calculated on a sliding scale pursuant to ERISA Section 4225(a)(1)(A), 29 U.S.C. sec. 1405(a)(1)(A), which effectively limits the Defendant's withdrawal liability to 30% of its net asset value after the sale. Since the sale price of the Defendant was only $250,000, the Defendant's withdrawal liability cannot be more than 30% of that amount.

E. The Defendant submitted its tax returns for the relevant years to the Fund in response to the Fund's information request, but the Fund has ignored the information contained in those returns in assessing withdrawal liability.

F. Moreover, the substance of the transaction effectively has been a merger or consolidation of the seller's covered operations with those of the purchaser, which under ERISA Section 4218, 29 U.S.C. sec. 1398, does not constitute a withdrawal by the seller. Thus there is no withdrawal liability at all in this case;

G. Now, after sitting on its hands for almost three years and spurning every effort to broker a compromise, the Fund finally seeks to have this Court order the Defendant to write out a $5 million check to the Fund when the Fund cannot demonstrate a penny's loss.

## Count One

1. Paragraph No. 1 states a legal conclusion to which no response is required.

2. Admit.

3. Admit.

4. Defendant admits that it <u>was</u> an "employer" as so defined, but that such status ceased effective October 18, 2001, when it sold its assets.

5. Admit.

6. Defendant admits being so bound up until October 18, 2001.

7. Paragraph No. 7 states legal conclusions using terms of art under the ERISA statute, to which no response is required.

10.[1]  Defendant admits that Plaintiff demanded payment of a withdrawal liability in the amount of $4,865,209.00, based upon a calculation made under ERISA Section 4211(c)(2), 29 USC sec. 1391(c)(2). Defendant denies the accuracy of that amount and the use of Section 4211(c)(2), 29 USC sec. 1391(c)(2).

Further answering:

a. On October 18, 2001, The 357 Corporation, a driver leasing company, sold all its assets to The Webster Corporation, which Defendant was led to believe was a wholly owned subsidiary of the DaSilva Group, one of the Fund's biggest contributors. Specifically, The 357 Corp. sold the rights to its principal contract, its good will and employee records. The purchase price for The 357 Corp., was $250,000.00, $10,000.00 in cash at the time of sale and the remaining $240,000.00 to be paid out in equal monthly payments over a three (3) year period. $240,000.00 of the purchase price was allocated to the principal contract, and $10,000.00 to goodwill;

b. To the Defendant's knowledge, all of its employees, including supervisors, were hired by The Webster Corporation and remain employed by The Webster Corporation performing the same work they performed while employed by The 357 Corp. The Plaintiff Fund continues to receive pension payments for these employees. The Fund has not suffered any loss as a result of this transaction. Moreover, there is no reason to believe that the purchaser is not and will not remain a financially viable operation; the DaSilva Group is one of the major participants in and contributors to the Fund;

c. The Defendant 357 Corp. has provided the Plaintiff Fund with copies of its federal income tax returns for the years 2000 and 2001. The reported loss for The 357 Corp. was $731.00. This figure includes the monies paid as a result of the sale. The only asset of The 357 Corp. is the remaining income stream from the sale, which is less than $200,000.00;

d. While denominated as a sale of assets, the substance of the transaction effectively has been a merger or consolidation of the seller's covered operations with those of the purchaser, which under ERISA Section 4218, 29 U.S.C. sec. 1398, does not constitute a withdrawal by the seller. This is evidenced by the continued employment by Webster of the former 357 Corp. employees, their continuance in performing covered operations attributable to the seller and the continuation of the purchaser contributing substantially the same number of contribution base units to the Fund on their behalf. The Webster Corp. is servicing the conveyed contracts with the former employees of The 357 Corp., and making contributions to the

---

[1] There is no paragraph 8 or 9 in Plaintiff's Complaint.

Fund. In terms of the day-to-day covered operations engaged in by the employees, little if anything has changed as a practical matter. Even the manager of the former 357 Corp. operations is employed by the Webster Corp., as well as some office staff. Thus since the substance of the transaction does not constitute a withdrawal in any event, there is no withdrawal liability at all;

    e.    The Fund calculated withdrawal liability pursuant to ERISA Section 4211(c)(2). Even if the Fund is correct that ERISA Section 4218, 29 U.S.C. sec. 1398, does not apply, this transaction still qualified as a "sale of assets" under ERISA Section 4225(a), 29 USC sec. 1405(a) (an assertion which the Fund has never contested), and thus the Fund was required to make a certain calculation to determine the "unfunded vested benefits attributable to employees of the employer," rather than an ordinary withdrawal liability calculation under Section 4211(c)(2), 29 USC sec. 1391(c)(2), which the Fund has reported it "is neither able nor required" to do;

    f.    Under Opinion Letter 82-8, issued by the Pension Benefit Guaranty Corporation, the failure of the Fund to make such calculation means that the Defendant is liable only under a sliding scale pursuant to ERISA Section 4225(a)(1)(A), 29 USC sec. 1405(a)(1)(A), which effectively limits the Defendant's withdrawal liability to 30% of its net asset value after the sale. Since the sale price of the Defendant was only $250,000, the Defendant's withdrawal liability cannot be more than 30% of that amount, which is far, far less than the demanded amount of almost $5 million. See also 29 USC sec. 1381(b)(employer's withdrawal liability to be adjusted "in accordance with section 1405 of this title").

Further answering, it would cause irreparable harm to the Defendant to be required to make interim payments where its assets are only about 4% of the asserted withdrawal liability and the Fund has sat on its hands for three years since the withdrawal. The Defendant would have no alternative but to seek the protection of the Bankruptcy Court should an interim payment order issue.

11.    Admit.

12.    Admit.

14.[2]    Denied.

## Count Two

15.    Defendant hereby incorporates its prior responses to paragraphs 1-14 as though fully set forth and restated herein.

---

    [2]    There is no paragraph 13 in Plaintiff's Complaint.

16. Defendant admits that Plaintiff made a request for information, otherwise denied.

17. Denied.

Respectfully Submitted by<br>
The 357 Corp.<br>
by its attorney<br>
<br>
_/s/ Geoffrey P. Wermuth_<br>
Geoffrey P. Wermuth, BBO #559681<br>
Murphy, Hesse, Toomey & Lehane, LLP<br>
World Trade Center East, 4th Fl.<br>
2 Seaport Lane<br>
Boston, MA 02210<br>
(617) 479-5000

Date: August 23, 2004

### Certificate of Service

I, Geoffrey P. Wermuth, hereby certify that on this 23rd day of August, 2004, I served a copy of the foregoing by first class mail, postage prepaid, on the following:

Catherine M. Campbell, Esq.
Feinberg, Campbell & Zack, P.C.
177 Milk St., Suite 300
Boston, MA  02109

_/s/ Geoffrey P. Wermuth_
Geoffrey P. Wermuth

-5-