UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CHARLES LANGONE, as FUND MANAGER of the NEW ENGLAND TEAMSTERS AND TRUCKING INDUSTRY PENSION FUND,<br><br>    Plaintiff,<br><br>v.<br><br>THE 357 CORP.<br><br>    Defendant. | )<br>)<br>)<br>)<br>)<br>)   C.A. No. 04cv11454 GAO<br>)<br>)<br>)<br>)<br>)<br>) |

### AFFIDAVIT OF CATHERINE M. CAMPBELL
### IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON COUNT II OF THE COMPLAINT

I, Catherine M. Campbell, depose and say as follows:

1. I am an attorney with the law office of Feinberg, Campbell & Zack, P.C., located at 177 Milk Street, Boston, MA 02109. I have acted as legal representative of the New England Teamsters and Trucking Industry Pension Fund ("the Fund") for the purposes of the above-captioned matter.

2. On or about July 7, 2003, I mailed to Geoffrey Wermuth, Attorney for Defendant, a letter which included a Withdrawal Liability Questionnaire. A true and correct copy of the letter is attached as Exhibit 1.

3. The Defendant has not provided the Fund the information requested in the Questionnaire.

I declare under penalties of perjury that the foregoing is true and correct this 14th day of January 2005.

_____
Catherine M. Campbell

# FEINBERG, CAMPBELL & ZACK, P.C.
### Attorneys at Law
177 Milk Street, Suite 300 • Boston, Massachusetts 02109
617-338-1976

MICHAEL A. FEINBERG
maf@fczlaw.com
CATHERINE M. CAMPBELL ◊
cmc@fczlaw.com
ARTHUR G. ZACK
agz@fczlaw.com
JONATHAN M. CONTI *
jmc@fczlaw.com

◊ Also Admitted in California
* Admitted Only in Wisconsin and Connecticut

Telecopier 617-338-7070
Toll Free 800-338-6004

July 7, 2003

Geoffrey P. Wermuth
Murphy, Hesse, Toomey & Lehane, LLP
World Trade Center East
Two Seaport Lane
Boston, MA 02210

Re: The 357 Corp. and Atlas Personnel, Inc.

Dear Mr. Wermuth:

I am responding to your request for review of the Fund's withdrawal liability assessment of the above referenced companies.

First, please note that as we discussed the reference in the demand letter contained a typographical error. The correct reference is Section 4211(c)(2).

Second, with respect to your assertion that the withdrawal liability of your client should be reduced pursuant to Section 4225(a) prior to the issuance of a Demand for Payment, the Fund is neither able nor required to do so. This provision is only applicable if there is a sale of "all or substantially of its assets" of the employer. The Fund has not been notified and has no information to indicate that the Asset Sale in question involved substantially all the seller's assets. In fact, the Fund was led to believe just the opposite.

Third, Section 4225(a) indicates that the assessment cannot exceed the greater of the portion of the liquidation value or the unfunded vested benefits attributed to employees of the employer. Certainly, even assuming that Section 4225(a) applies, the assessment cannot be calculated without further information from your client regarding its liquidation value. In any case, it is the position of the Fund that the withdrawal liability assessment contained in the original demand accurately reflects the unfunded

vested liabilities attributable to the employees of the withdrawing employer as indicated in Section 4225(a). The method used by the Fund to calculate an employer's withdrawal liability is already pro-rated to the Employer. As indicated in the attached "Appendix B" of the Fund Actuary's Withdrawal Liability report:

> "The unfunded value of vested benefits is prorated in determining the liability of an employer that withdraws after September 30, 1994, by applying the ratio of (i) the contributions that the employer was obligated to make for the 10 plan years ending with the plan year preceding withdrawal, to (ii) total employer contributions to the Fund during that 10-year plan period."

Total employer contributions are reduced by those contributions made by a significant employer that withdrew from the Fund as well as by any other employer to which a notice of withdrawal liability was sent in the 10-year base period.

If the 357 Corp. control group intends to raise Section 4225(a) as a defense based on its liquidation value, it must provide the Fund with the following documentation:

1) Financial documents that indicate that the subject sale of assets resulted in a sale of "all or substantially all" of the assets of the seller; and
2) Financial documents indicating the liquidation or dissolution value of the seller determined after the sale.

Finally, the Trustees will not agree to postpone the interim payments. Under the statute, interim payments must be made while the matter is under review or subject to arbitration. As stated by the Seventh Circuit when examining a similar request by an employer to avoid interim payments, "Because either the assets left after the sale of the relevant assets (pursuant to §1405(a)(1)(A)) or the amount of unfunded benefits attributable to the defendant (pursuant to § 1405(a)(1)(B)) may be sufficient to cover the entirety of the assessed withdrawal liability, the Pension Fund's claim for withdrawal liability is not frivolous, and the general rule that interim payments must be paid pending the outcome of arbitration still applies." *Central States, Southeast And Southwest Areas Pension Fund et al. v. National Cement Products Company, An Ohio Corporation*, 1998 U.S. Dist. LEXIS 506, (1998). The First Circuit has also clearly stated that Multiemployer Pension Plan Amendment Act (MPPAA) requires withdrawing employers to "pay now, dispute later." *Debrecini v. Merchants Terminal Corporation*, 889 F.2d 1 (1st Cir. 1989); *Giroux Bros. Transportation, Inc. v. New England Teamsters and Trucking Industry Pension Fund*, 73 F.3d 1, 5 (1st Cir. 1996).

As your letter of May 27, 2003 constitutes a request for review pursuant to Section 4219 of the MPPAA, I am enclosing a copy of the Fund Rules and Regulations with respect to the resolution of withdrawal liability disputes along with AAA Rules regarding the arbitration. In addition, I am enclosing a withdrawal liability questionnaire the purpose of which is to identify all trades or businesses under common control with the withdrawing entity. The information is necessary in order to ensure the collection of the assessed withdrawal liability and is made pursuant to Section 4219(a) and must be

answered within thirty days of this request. Please do not hesitate to call if you have any further questions.

Very truly yours,

Catherine M. Campbell

Enclosure
F:\New England Teamsters\The 357 Corp\Letters\Response to request for review.doc

# WITHDRAWAL LIABILITY QUESTIONNAIRE

Name of Company: The 357 Corp.
Date of Withdrawal: December 2, 2001

The questions below refer to the time period of January 2001 to date.

The term "trade of business" refers to any corporation, sole proprietorship, partnership, joint venture, unincorporated entity, estate, trust, option to purchase stock or any other activity, including the ownership of real estate where the purpose of the activity is for income or profit.

1. Identify all trades or businesses under common control with The 357 Corp., pursuant to Section 4001(b)(1) of the Employee Retirement Income Security Act and/or as defined by Section 414 of the Internal Revenue Code. As to each entity identified, state the addresses of all headquarters and branch offices and whether the entity continues to operate.

    _____
    _____
    _____
    _____
    _____

2. Identify each owner/shareholder of The 357 Corp. As to each owner, state the address, telephone number, the ownership interest held in The 357 Corp. in percentage terms, and the date on which such interest was acquired.

    _____
    _____
    _____
    _____
    _____

3. Identify all trades or business in which each owner/shareholder of The 357 Corp. holds an eighty percent (80%) ownership interest. As to each entity identified, state the addresses of all headquarters and branch offices and whether the entity continues to operate.

_____

_____

_____

_____

_____

_____

By_____

Title:

Date_____

2

## APPENDIX B

## NEW ENGLAND TEAMSTERS & TRUCKING INDUSTRY PENSION FUND

### The Fund's Method for Allocating Withdrawal Liability

The fund determines the liability of an employer that has completely withdrawn on the basis of the statutory method defined in Section 4211(c)(2) of ERISA.

For complete withdrawals by an employer after September 30, 1980 but before September 30, 1995, the Fund used the modified statutory method known as the "two pool" method. As of September 30, 1994, the "first pool" is completely amortized, so the liability assessed to withdrawing employers will be based solely on the unfunded value of the Fund's vested benefits.

The liability of an employer for complete withdrawal after September 30, 1994 is the amount of the employer's prorated share of the unfunded value of vested benefits as of the end of the plan year preceding withdrawal.

- **Unfunded Value of Vested Benefits**

  The Fund's unfunded value of vested benefits, as of a given date, is determined by subtracting, as of that date, the Actuarial value of Fund assets from the value of vested benefits under the Fund.

  The Actuarial Value of Assets is calculated using a "smoothing" method. The investment return on Market Value is compared to the 8.5% actuarial assumption, and any gains or losses are recognized over 5 years. In previous valuations, the market value of assets has been used.

- **Proration to the Employer**

  The unfunded value of vested benefits is prorated in determining the liability of an employer that withdraws after September 30, 1994, by applying the ratio of (i) the contributions that the employer was obligated to make for the 10 plan years ending with the plan year preceding withdrawal, to (ii) total employer contributions to the Fund during that 10-year period.

Appendix - 2



APPENDIX B
(continued)

Total contributions to the fund are:

(1) The employer contributions accrued in each of the plan years if received by the Fund within 1½ months after the end of the plan year, plus

(2) Any contributions received in that period that accrued earlier but were not included for purposes of this denominator figure as contributions with respect to any earlier plan years.

The total of employer contributions is reduced by any contributions otherwise included in the total that were made by a "Significant Employer" (as defined below) that withdrew from the Fund in the 10-year period and by any other employer to which a notice of withdrawal liability was sent by the Fund within that apportionment base period.

- Significant Employer

A "Significant Employer" means:

(a) An employer that contributed in any one plan year of the relevant period at least one percent of total employer contributions to the Fund for that year, as determined for purposes of the relevant denominator or, if lower, $250,000.

(b) Any other employer that was a member of an employer association, a group of employers covered by a single collective bargaining agreement, or a group of employers covered by agreements with a single labor organization, if the contribution obligations of substantially all members of the group ceased in a single plan year and the group's aggregate contributions to the Fund in any one plan year of the relevant period totaled at least one percent of total employer contributions to the Fund for that year, or, if lower, $250,000.

- De Minimis

Each withdrawal liability assessment is the total of the unamortized balances of the allocated amounts, as defined above, less a *de minimis* deductible. The deductible is three quarters of one percent of the Fund's unfunded liability for vested benefits, but not more than $50,000. This deductible amount is reduced, dollar for dollar, by the amount by which the total of charges prorated to the employer exceeds $100,000.

Appendix - 3