- 1 -

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

---

CHARLES LANGONE, as FUND MANAGER of the NEW ENGLAND TEAMSTERS AND TRUCKING INDUSTRY PENSION FUND,

                Plaintiff,

v.

THE 357 CORP.; THE TRANS-LEASE GROUP, INC.; FAIRLANE ACCEPTANCE COMPANY; WESTWOOD CARTAGE, INC.; LABOR PLUS, INC. aka THE TRANS-LEASE GROUP, INC. ATLAS PERSONNEL, INC. aka THE TRANS-LEASE GROUP, INC.; ATLAS TRUCK LEASING, INC.;

                Defendants.

Civ. A. No. 04 11454-GAO

---

**MEMORANDUM IN SUPPORT OF THE WEBSTER CORPORATION'S OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT**

I. **BACKGROUND**

On June 25, 2004, Plaintiff, the fund manager of the New England Teamsters and Trucking Industry Pension Fund (the "Pension Fund"), filed a Complaint against The 357 Corporation ("357"), seeking damages and injunctive relief arising from unpaid withdrawal liability under ERISA. (Compl. ¶ 1). Plaintiff alleged 357 incurred this withdrawal liability in December 2001, when the company "permanently ceased to have an obligation to contribute to the Pension Fund." (Compl. ¶ 7). In January 2005, Plaintiff filed a Motion for Partial Summary Judgment on Count II of the Complaint, seeking an order to compel 357 to disclose the identity of all trades and businesses under its common control. (See Pl.'s Mot. Partial Summ. J. and Pl.'s

Mem. Supp. Mot. Partial Summ. J.).  Pursuant to 29 U.S.C. § 1401, 357 initiated a separate arbitration proceeding to contest its withdrawal liability.  Discovery is underway in this proceeding.  Webster was unaware of this proceeding, has not participated and legally cannot participate in the proceeding.

On July 8, 2005, before this Court had ruled on Plaintiff's Motion for Partial Summary Judgment, Plaintiff filed a motion for leave to file his First Amended Complaint, seeking to add various entities then known to the Plaintiff as being under common control with 357.  (See Mem. Supp. Second Am. Compl. 1). The Court granted the motion and the First Amended Complaint was filed in August 15, 2005.   Less than four months later, Plaintiff filed the current motion for leave to file a Second Amended Complaint in order to add Webster as a defendant on a common law contract theory of third-party beneficiary.  (Second Am. Compl. ¶¶ 74-78).  Plaintiff alleges that (i) provisions of two separate Asset Purchase Agreements, both dated October 18, 2001 (the "Agreements"), which Webster entered into with Defendants 357 and Atlas Personnel (the "Contributing Employers"), evidence Webster's acknowledgment and assumption of the Contributing Employers' unfunded withdrawal liability; and (ii) as a third-party beneficiary to these Agreements, the Pension Fund can recover directly from Webster for the Contributing Employers' withdrawal liability.  Plaintiff's proposed third-party beneficiary claim is the subject of this Opposition.

II.   **ARGUMENT**

Federal Rule of Civil Procedure 15(a) provides that after a party's right to amend a pleading as a matter of course has been extinguished, as is the case here, leave to amend the pleading "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a).   The decision to grant or deny Plaintiff's motion is within the sound discretion of the trial court.  Foman v.

- 3 -

Davis, 371 U.S. 178, 182 (1962). Common reasons to deny a motion to amend include undue delay, undue prejudice to the opposing party, and futility of amendment. Id.

This court should exercise its sound discretion and deny Plaintiff's motion for leave because the amendment would be futile – in that Plaintiff will be unable to survive a motion to dismiss Count Twelve under either Fed. R. Civ. P. 12(b)(1) or 12(b)(6) – and was unduly delayed without any good cause shown.

> A. **The Court Should Exercise Its Discretion To Deny Plaintiff's Motion To Add A Common Law Contract Claim (Third-Party Beneficiary) (Count Twelve Of Plaintiff's Proposed Second Amended Complaint) Against Webster Because Such An Amendment Would Be Futile**.
>
> 1. <u>This Court Lacks Supplemental Jurisdiction Over A Claim Which Does Not Arise Out Of The Same Case And Controversy As The Underlying Federal Action To Recover Delinquent Withdrawal Liability Payments Under ERISA</u>.

Plaintiff seeks to bring a common law third-party beneficiary claim against Webster. Since this claim does not present a federal question and there is no diversity among the parties, Plaintiff's only jurisdictional basis for hauling this defendant into federal court is to rely on the supplemental jurisdiction statute. 28 U.S.C. § 1367(a) (stating that ". . . in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are *so related to claims in the action* within such original jurisdiction that they form *part of the same case or controversy* under Article III of the United States Constitution") (emphasis added).  However, Plaintiff has presented no argument to support its contention that this court would have supplemental jurisdiction over the proposed contract claim.

In order for a federal court to exercise supplemental jurisdiction over a state law claim, the two claims must derive from a common nucleus of operative fact. <u>United Mine Workers of Am. v. Gibbs</u>, 383 U.S. 715 (1966); <u>Vera-Lozano v. Int'l Broad.</u>, 50 F.3d 67 (1st Cir. 1995).

- 3 -

- 4 -

The state and federal claims must be so intertwined that the plaintiff would be expected to try them both in one judicial proceeding.  Vera-Lozano, 50 F.3d at 70 (citing United Mine Workers of Am., 383 U.S. at 725).  In deciding whether a state law claim is part of the same case or controversy as the federal claim, courts "look to whether the claims arise from the same facts, or involve similar occurrences, witnesses or evidence."  Hudson v. Delta Airlines, Inc., 90 F.3d 451, 455 (11th Cir. 1996), cert. denied, 519 U.S. 1149 (1997) (citation omitted).

      Looking at these factors, there is insufficient basis for exercising jurisdiction over Plaintiff's proposed third-party beneficiary claim because the necessary logical and factual interdependence is lacking between the state claim and the federal lawsuit.   In the federal ERISA litigation, Plaintiff seeks to recover withdrawal liability that the sellers of certain assets allegedly incurred by reason of having stopped contributing to a benefit plan covered by ERISA.  The amount of the withdrawal liability, if any, is being contested, as required by ERISA, in a separate arbitration proceeding.  No evidence, witnesses, or facts on these issues will be considered by the Court.  It is entirely irrelevant, for purposes of determining the current Defendants' withdrawal liability, why and to whom the Contributing Employers sold their assets.  Webster's presence is therefore wholly unnecessary for the adjudication of the ERISA claims.

      In contrast to the ERISA claim about which there will be no disputed facts, on the third-party beneficiary claim the Pension Fund would have to prove (i) that the Agreements obligate Webster to pay for the Contributing Employers' withdrawal liability and (ii) that the Fund is an intended third-party beneficiary of such Agreements.  This analysis would require this Court to consider legal and factual issues which are completely different from the issues in the ERISA case, such as interpretation of ambiguous contractual provisions, the intent of the parties generally and whether the parties intended to benefit the Pension Fund.  In adjudicating this

- 5 -

claim, new witnesses would have to be heard and new evidence presented concerning the negotiations of the parties and their intent.  Moreover, the contract claim will be tried *after* the ERISA claim has been fully adjudicated.  There is therefore no comity between the contract claim and the ERISA claim – the two claims form two *separate* cases, not one case and controversy.  See Hudson, 90 F.3d at 456 (no supplemental jurisdiction over state law breach of contract claim where the alleged facts underlying contract claim were completely unrelated to the allegations in support of the ERISA claims).  Furthermore, judicial economy and convenience would only be adversely affected by adding Webster to this lawsuit.  Kuehl v. Lafarge Corp., 164 F. Supp. 2d 200, 202 (D. Ma. 2001) (citation omitted).

A federal court's power to assert jurisdiction over state claims is exercised as a matter of discretion – not of plaintiff's right.  United Mine Workers of Am., 383 U.S. at 725.  This discretion should be exercised where supplemental jurisdiction would "*further* the goal of efficient and orderly disposition of the entire matter."  Shepard v. Egan, 767 F. Supp. 1158, 1162 (D. Ma. 1990) (emphasis added).  Here, adding the contract claim would only serve to *delay*, rather than *assist*, this Court in effectively resolving the ERISA litigation.  Therefore, this Court would properly refuse to exercise jurisdiction over the contract claim if the claim were added to the Complaint.  Consequently, granting Plaintiff's motion for leave would be futile and the motion should be denied.

      2.      <u>The Contractual Provisions Relied Upon By The Plaintiff Conflict With, And Are Thus Preempted By, The Enforcement Mechanism Provided By ERISA</u>.

Plaintiff's proposed amendment also would be futile for failure to state a claim upon which relief can be granted because federal law preempts Plaintiff's common law contract claim. Fed. R. Civ. P. 12(b)(6); Carlo v. Reed Rolled Thread Die Co., 49 F.3d 790 (1st Cir. 1995)

- 5 -

- 6 -

(affirming district court holding that it would have been futile to allow the complaint to be amended because ERISA preempted the breach of contract and misrepresentation claims).

ERISA supercedes and preempts "all State laws insofar as they may now or hereafter *relate to*" an ERISA plan. 29 U.S.C. § 1144(a) (emphasis added). For the purposes of ERISA preemption, state law includes not only statutes, but state common law claims. See id. at 1144(c)(1) (stating that "[t]he term 'State law' includes all laws, decisions, rules, regulations, or other State action having the effect of law, of any State"). ERISA preemption of state law claims is "conspicuous for its breadth"; its "deliberately expansive language was designed to establish pension plan regulation as exclusively a federal concern." Carpenters Health and Welfare Trust Fund for Cal. v. Tri Capital Corp., 25 F.3d 849, 853 (9th Cir. 1994), cert. denied, 513 U.S. 1018 (1994) (citing Ingersoll-Rand Co. v. McClendon, 498 U.S. 133 (1990)). Thus, "[a] state law may 'relate to' a benefit plan, and thereby be pre-empted, even if the law is not specifically designed to affect such plans, or the effect is only indirect." Ingersoll-Rand Co., 498 U.S. at 139.

For example, courts have held that state law was preempted when it sought to provide an *alternative or supplemental* enforcement mechanism to the mechanism provided by ERISA. See Carpenters Health, 25 F.3d at 854 (multi-employer employee benefit plans' third-party beneficiary claim against prime contractor, seeking recovery of subcontractor's unpaid plan contributions, was preempted because the claim supplemented the remedy provided by ERISA). When a plaintiff seeks to impose a new theory of liability where none currently exists under ERISA, such a claim has previously been held preempted. Plumbing Industry Board v. L&L Masons, Inc., 927 F. Supp. 645 (S.D.N.Y. 1996), aff'd, 126 F.3d 61 (2d Cir. 1997) (holding that union's third-party beneficiary contract action for recovery of contributions to union's benefit

- 7 -

plans was preempted; contract claim imposed new theory of liability that did not exist under ERISA).

Similarly here, the Plaintiff seeks to impose liability in a way that directly conflicts with ERISA.  Section 4204 of ERISA sets forth the mechanism by which an employer who sells all or substantially all of its assets and ceases to make contributions to a benefit plan may avoid or limit withdrawal liability arising from the sale.[1]  Particularly, only if and when the sale complies with each of the statutory requirements outlined in Section 4204 does the selling employer avoid imposition of liability.  Likewise, ERISA makes clear that unless the sale comports with Section 4204, the buyer of assets is not otherwise liable for the seller's withdrawal liability.  See OGC Opinion Letter 91-3 (March 29, 1991) (stating that "when a sale of assets results in the selling company no longer having an obligation to contribute for covered operations under the plan," the company is "subject to the withdrawal liability imposed under section 4201" but "the purchaser company is *plainly not responsible for the selling company's contribution history*" and that "[i]n a sale that does not comply with Section 4204, the purchaser is normally regarded as having entered the plan with respect to the purchased operations *as of the effective date of its obligation to contribute to those operations*") (emphasis added).

---

[1] Section 4204 of ERISA states, in relevant part, that "[a] complete or partial withdrawal of an employer" (the "seller") "does not occur solely because, as a result of a bona fide, arm's-length sale of assets to an unrelated party" (the "purchaser"), the seller ceases operations or ceases to have an obligation to contribute for such operations, if:
    "(A) the purchaser has an obligation to contribute to the plan with respect to the operations for substantially the same number of contribution base units for which the seller had an obligation to contribute to the plan;
    (B) the purchaser provides to the plan for a period of 5 plan years commencing with the first plan year beginning after the sale of assets, a bond . . .  in an amount equal to the greater of (i) the average annual contribution required to be made by the seller . . . under the plan for the 3 plan years preceding the plan year in which the sale of the employer's assets occurs, or (ii) the annual contribution that the seller was required to make . . . under the plan for the last plan year before the plan year in which the sale of the assets occurs, which bond or escrow shall be paid to the plan if the purchaser withdraws from the plan, or fails to make a contribution to the plan when due, at any time during the first 5 plan years beginning after the sale; and
    (C) the contract for sale provides that, if the purchaser withdraws in a complete withdrawal, or a partial withdrawal with respect to operations, during such first 5 plan years, the seller is secondarily liable for any withdrawal liability it would have had to the plan with respect to the operations (but for this section) if the liability of the purchaser with respect to the plan is not paid."  29 U.S.C. § 1384(a)(1).

Section 4204 has also provided the mechanism by which parties may alter the statutory requirements: they must seek a variance or exemption with the Pension Benefit Guarantee Corporation (the "PBGC"). 29 U.S.C. § 1384(c) (providing that the PBGC "may grant individual or class variances or exemptions from the requirements of [subparagraphs (a)(1)(B) and (C)] if the particular case warrants it"). Before the PBGC may grant a variance or exemption, the corporation must follow certain statutory requirements, such as publishing notice in the Federal Register and affording interested persons an opportunity to present their views. Id.

Plaintiff seeks to bring a contract claim whose effect and purpose would be to impose a seller's withdrawal liability onto the buyer of the assets, even where the sale fails to comply with the requirements outlined in Section 4204. However, in that situation, ERISA has already determined that the liability should fall onto the seller of the assets, not the buyer. Consequently, Plaintiff's claim would impose a new theory of recovery under ERISA. Such a claim conflicts with and is preempted by ERISA. See Plumbing Industry Board, 927 F. Supp. at 648-49 (Plaintiff's third-party beneficiary contract claim, which seeks the very contribution from a party which Plaintiff cannot receive under ERISA, imposes a liability that does not exist under ERISA and is therefore preempted); Carpenters Health, 25 F.3d at 855 (statute which "creates a separate substantive cause of action that a trust fund may bring" to obtain a judgment is preempted).

The basic purpose of Section 4204 is to protect a pension plan when an employer sells its assets by requiring that the buyer assumes the seller's liability should it withdraw from the plan less than five years after the sale; the parties post bonds; and the seller remains secondarily liable. This purpose would be obviated if private parties could bifurcate the safeguards in the federal statute and reallocate their potential liability.

### 3. Plaintiff Cannot Recover On A Third-party Beneficiary Theory.

Plaintiff argues that it is the beneficiary of provisions found in the Agreements with the Contributing Employers, which allegedly allow the Pension Fund to recover directly from Webster for the sellers' withdrawal liability.[2]  In Massachusetts, for a third-party to recover on a contract, the party must demonstrate that he was an intended, rather than an incidental, beneficiary of that contract.  Rousseau v. Diemer; 24 F. Supp. 2d 137, 144 (D. Mass. 1998). According to the Restatement of Contracts, which is followed in Massachusetts, a third party is an intended beneficiary if the contractual promise and its circumstantial setting evidence the intent on the part of the promisee to confer the benefit of the promised performance onto such party.  Restatement (Second) of Contracts § 302(1) (1981); Miller v. Mooney, 725 N.E.2d 545, 549-50 (Mass. 2000) (adopting the Restatement standard).  Courts therefore look to the language and circumstances of the contract for indicia that the parties *clearly and definitely* intended the third party to benefit from the promised performance.  Id. at 550 (citation omitted) (emphasis added).

The language and circumstances surrounding the contract negotiations in this case indicate that the parties never intended to confer any right or entitlement to the Pension Fund by including the provisions in the Agreements.  First, there is no reference whatsoever to the Pension Fund in the Agreements; this is natural, considering the purpose of the contracts was to provide for the sale of certain assets, not the recovery of withdrawal liability.  Public Service Co.

---

[2] Section VIII in each Agreements, which contains the same language, states:

> The parties acknowledge that Seller currently has outstanding certain unfunded pension liabilities and the parties agree to allocate the liability for the unfunded pension liabilities as follows:  On and after April 1, 2003, Purchaser shall assume responsibility for 20% of Seller's unfunded pension liability on the Closing Date.  On and after April 1, 2004, Purchaser shall assume an additional 20% of seller's unfunded pension liability on the Closing Date, and on and after April 1, 2005, Purchaser shall assume all of Seller's unfunded pension liability on the Closing Date.  Purchaser shall indemnify and hold harmless Seller against any failure to assume and pay any such unfunded pension liabilities.

- 9 -

of N.H. v. Hudson Light and Power Dept., 938 F. 2d 338, 343 (1st Cir. 1991) ("Massachusetts courts steadfastly have refused to accord intended beneficiary status under a contract whose terms, interpreted in the particular transactional setting, do not provide for the benefits of performance to *flow directly* to the third party.") (citations omitted) (emphasis added); Rousseau, 24 F. Supp. 2d at 145 (stating that the "agreement must have been for the express purpose of satisfying and/or discharging that duty or liability").  Second, nothing has been pled (nor could it be) to show that the circumstances surrounding the contract negotiations indicate that the provisions were intended to benefit the Pension Fund.

     Finally, even if the contractual provisions mean that Webster assumed the sellers' unfunded pension liability, and even if Plaintiff has third-party beneficiary status under the Agreements, still the Plaintiff would be unable to recover under the terms of the contracts. Indeed, the contract provisions provide that: "*On and after April 1, 2003*, Purchaser shall assume responsibility for 20% of Seller's unfunded pension liability on the Closing Date."  See n.2 (emphasis added).  If the withdrawal liability was triggered at any time before April 1, 2003, Webster did not assume any responsibility for that liability.  As Plaintiff has recognized, the Contributing Employers withdrew from the Pension Fund on December 22, 2001, when they stopped contributing to the fund.  Proposed Second Am. Compl. at 4.  Therefore, even assuming, *arguendo*, that the contractual provisions were intended to make Webster liable for the Contributing Employers' withdrawal liability, where – as is the case here – the sellers incurred this liability over a year *before* the date on which Webster first became obligated to assume *any* liability, Webster is not liable pursuant to the contractual arrangement between the parties.

- 10 -

In sum, the above analysis reveals that Plaintiff will be unable to survive a potential 12(b)(6) motion by Webster on the third-party beneficiary claim. Therefore, allowing the Plaintiff to amend his complaint by adding this claim would be futile.

> B. **The Court Should Exercise Its Discretion To Deny Plaintiff's Motion To Add A Common Law Contract Claim Against Webster Because of Plaintiff's Inexcusable Delay In Seeking the Amendment**.

This Court should deny Plaintiff's motion because of Plaintiff's unreasonable and unexplained 17-month delay in seeking to add a count against Webster, despite Plaintiff's knowledge of the very transactions that triggered the withdrawal liability.

Mere delay in seeking an amendment is a sufficient basis for denying a plaintiff's motion for leave to amend the complaint. Larocca v. Borden, Inc., 276 F.3d 22, 32 (1st Cir. 2002); Acosta-Mestre v. Hilton Int'l of Puerto Rico, Inc., 156 F.3d 49 (1st Cir. 1998) (finding undue delay where Plaintiff filed a motion for leave to file a second amended complaint fifteen months after the initial complaint had been filed and over a year after the first amendment). Where a plaintiff possessed the knowledge necessary to amend the complaint for some time, yet did not move to amend, an explanation is in order. Las Vegas Ice & Storage Co. v. Far West Bank, 893 F.2d 1182, 1185 (10th Cir. 1990) ("Where the party seeking amendment knows or should have known of the facts upon which the proposed amendment is based but fails to include them in the original complaint, the motion to amend is subject to denial.") (citation omitted). Here, Plaintiff's motion for leave to amend merely states that "Plaintiff seeks to conform" the complaint to "the newly disclosed evidence." Pl.'s Mem. Supp. Mot. Second Am. Compl. at 2. Yet, Plaintiff was notified of the parties' contemplated transactions during the 2001 sales negotiations and before the consummation of the transactions.

When "considerable time has elapsed between the filing of the complaint and the motion to amend, the movant has the burden of showing some valid reason for his neglect and delay."

- 11 -

Acosta-Mestre, 156 F.3d at 52 (citations omitted).  Plaintiff, having knowledge of the transactions giving rise to the withdrawal liability over four years ago, should not be allowed to sit on its rights and wait for time to elapse without offering any valid explanation for doing so, especially where the opposing party had no notice of the impending proceedings.  Therefore, the balance of equities in this case is clearly in favor of Webster and against granting Plaintiff's motion for leave to add a common law contract claim against Webster.

III.     **CONCLUSION**

For the foregoing reasons, The Webster Corporation respectfully requests that this Court deny Plaintiff's Motion for Leave to file his Second Amended Complaint.


                                                THE WEBSTER CORPORATION
                                                By its attorney,


                                                _____/s/ Neil Jacobs_____ _
                                                Neil Jacobs  (BBO #249300)
                                                Wilmer Cutler Pickering Hale and Dorr LLP
                                                60 State Street
                                                Boston, Massachusetts 02109
                                                (617) 526-6000

Dated:  December 21, 2005